### In re McLAUGHLIN et al.

Court of Customs and Patent Appeals.
December 30, 1929.

Patent Appeal No. 2163.

Pennie, Davis, Marvin & Edmonds, of New York City (W. B. Morton, of New York City, of counsel), for appellants.

T. A. Hostetler, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge. This is an appeal from the decision of the Commissioner of Patents, affirming that of the examiners in chief finally rejecting claims 1 and 2 of appellant, which read as follows:

"1. A food product comprising a mixture of dry yeast and prepared chocolate.

"2. A food product comprising a mixture of dry yeast and a chocolate compound containing less than 30% of water."

The references are:

Hull, 413,944, October 29, 1889.

Cameron, 427,553, May 13, 1890.

Booker, 1,309,979, July 15, 1919.

The specification upon which the claims are based reads as follows:

"The object of this invention is to produce a palatable food product containing a maximum amount of water soluble vitamines which maintains its value for a long period of time without artificial aid, such as cold storage, and which is instantly available for use. It is well known that the yeast plant contains a relatively large amount of vitamines, but in order to get the benefit of it, it has been found necessary to use either the living or the freshly killed yeast plant.

"We have discovered that if the yeast be first desiccated in such a manner as not to destroy its life and then mix with some palatable food which does not contain sufficient water to cause the yeast to attempt to grow, that it will remain alive and preserve its chemical and vital qualities through long periods of time under ordinary conditions.

"We also find that, if the water content of the mixture of yeast and the palatable vehicle be over 30 per cent., the yeast will attempt to grow, and will slowly invert the sucrose of the vehicle into glucose. For this reason the ordinary commercial yeast cakes at present on the market are not adapted for our purpose since they contain approximately 75 per cent of water.

"We have found that, owing to the low temperature at which its melts and the absence of a large percentage of free water, chocolate is ideally adapted to carrying the dried yeast plant. In carrying our invention into effect, we take a mixture of chocolate and cane sugar, melt them together and when the temperature of the mixture falls below the point at which the yeast would be injured (about 110° F.), the desiccated yeast is thoroughly incorporated into the mass which is made into cakes and allowed to cool. These cakes are palatable and, in ordinary temperatures, preserve the valuable food properties of the yeast for a long period of time. We, of course, do not limit ourselves to the use of chocolate and sugar for carrying the desiccated yeast.

"By the term 'prepared chocolate' used in the appended claims we mean chocolate in cake form sweetened and flavored for immediate consumption without further preparation."

The decision of the Commissioner reads as follows:

"Applicant has appealed from the decision of the examiners-in-chief, affirming that of the primary examiner, denying patentability to claims 1 and 2, which are as follows:

"1. A food product comprising a mixture of dry yeast and prepared chocolate.

"2. A food product comprising a mixture of dry yeast and a chocolate compound containing less than 50% of water.

"The patents relied upon are:

"Booker, 1,309,979, July 15, 1919.

"Hull, 413,944, October 29, 1889.

"Cameron, 427,553, May 13, 1890.

"The claims are directed to an edible product consisting of dry yeast and a chocolate compound. The yeast is incorporated with the chocolate and is stated to be protected by the latter. The chocolate is claimed to serve as a vehicle for the yeast, making the latter more palatable and also protecting the yeast from atmospheric moisture and evaporation.

"The patent to Hull discloses a yeast cake made up of the yeast incorporated with prepared corn meal which latter, under the effect of great pressure employed in the manufacture of the cake, is forced to the surface of the cake and forms a thin compact crust serving to protect the yeast from the deleterious action of the atmosphere. Over the entire surface of the yeast cake a smooth coating of sugar is placed.

"The Cameron patent discloses a cake of dry yeast coated with sugar and, outside the latter, with paraffin, shellac, or other innocuous mineral, or vegetable wax or gum, impervious to water. It is stated by this patentee that the yeast cake is thus coated so that 'the air and all moisture shall be wholly excluded therefrom, so that it will retain its life and efficiency for an indefinite period and in all climates, and be uneffected by its surroundings.'

"The claims are anticipated if it be held the substitution of the chocolate compound for the corn meal and sugar involved no invention. The palatable qualities of chocolate compounds are a matter of common knowledge. These materials have been used in a multitude of relations to improve the taste of edible products. It is likewise well known that the chocolate compound does not readily deteriorate when exposed to the atmosphere. The patentee, Hull, having disclosed that the deleterious effect of the atmosphere upon yeast may be prevented by mixing with the latter a material not readily affected by the atmosphere, it would seem there was nothing inventive in selecting another well known material and making the substitution. While the applicant argues the product is new and

useful and is intended for direct consumption rather than use in baking bread, yet it is believed to have been nothing inventive in merely selecting the well known chocolate compond and mixing it with the yeast to obtain the protecting and preserving functions suggested by Hull. The decision of the examiners-in-chief is affirmed."

Appellant insists that the Commissioner erred in holding that chocolate and corn meal are equivalents in the art to which the application relates or any art, and in holding that the applicant's food product and the preserved yeast for baking purposes belong to analogous arts.

It should first be observed that the claims here in question relate to a product of manufacture and not to a process.

Appellants, in their brief, admit that the palatable qualities of chocolate compounds are well known, and that chocolate compounds do not readily deteriorate when exposed to the atmosphere, but contend that they are the first to utilize a chocolate compound for the dual purpose of preserving dry yeast against deterioration and producing a palatable foodstuff containing in a cake no larger than an ordinary yeast cake an equivalent amount of yeast.

The patent to Hull discloses a yeast cake produced by mixing yeast and corn meal, subjecting the cake to pressure and applying a smooth coating to the surface, preferably of sugary matter. The specification states that the effect of the pressure is to force the finer granules of prepared corn meal to the surface, forming a thin compact crust, which serves to protect for a considerable length of time the yeast plant throughout the interior portion of the cake from the deleterious action of the atmosphere. It also states that the coating of sugary matter furnishes an effective bar to the admission of the atmosphere to the yeast in the cake. The patent to Cameron also discloses a mixture of yeast with corn or barley meal made into a yeast cake, with the moisture afterwards extracted therefrom by drying. The cake is then coated with sugar and finally coated with a thin layer of paraffin or wax. In this patent the yeast cake is stated to be for baking purposes, while the Hull patent is silent as to use. These being product claims, this is immaterial. If the specification of either discloses a composition of matter that covers appellants' claims, there is no invention by them in their product. The only question is whether prepared chocolate or a chocolate compound is an equivalent for corn meal. We think it is. Both are edible, both serve to prevent deteri-

oration from the atmosphere, and the only difference between them is one of degree. The chocolate preparation does prevent atmospheric deterioration, but its property in this respect is well known, and it may be that it is more effectual in doing so than corn meal; it is more palatable than corn meal, but its quality in that respect is also well known.

The facts in this case are not, in principle, unlike those in the case of Maryland Hominy & Coraline Co. v. Dorr (C. C.) 46 F. 773, 776, involving the patentability of a preparation of corn meal, where the court said: "The complainants' product, independently of the process of making it, cannot be supported as for a new composition of matter, or a new substance not before known. Commercially speaking, it may be a new article of manufacture, but it is, after all, only an improved preparation of Indian corn, with the same characteristics and qualities as other similar preparations. It may be less liable to spoil, more porous, more easily soluble; it may unite more readily with the diastase of malt,—but these are not new and peculiar qualities; they are only the same qualities in an improved degree, which are inherent in other preparations of the same substance."

The fact that in the case at bar the yeast is mixed in a dry state, while in the Cameron patent it is mixed while in a moist state, is immaterial. In re Roselius, 36 App. D. C. 130.

We agree with the Commissioner that the substitution of prepared chocolate or a chocolate compound for corn meal, in the product produced, does not involve invention.

As to the contention of appellants that the Commissioner erred in holding that applicants' food product and the preserved yeast for baking purposes belong to analogous arts, we repeat that the patent to Hull is silent upon the use of the yeast cake, and we cannot say that it was intended to be used solely for baking purposes.

Furthermore, it is stated in appellants' brief: "As everyone knows, yeast has become a popular tonic food, even in its more or less unpalatable form." If the ordinary yeast cake be used both for baking purposes and as a tonic food, we cannot say that the art of making one form exclusively for food is not analogous to the art of making another form for use both as a food and for baking purposes.

The decision of the Commissioner is affirmed.

Affirmed.